438 F.2d 331
 76 L.R.R.M. (BNA) 2538, 64 Lab.Cas. P 11,482
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
AMERICAN BEEF PACKERS, INC., Respondent.
Amalgamated Meat Cutters and Butchers Workmen of North
America, AFL-CIO, LocalUnion No. 641, Intervenor.
 No. 161-70.
 United States Court of Appeals, Tenth Circuit.
 Feb. 8, 1971.
 
 Michael Levin, Washington, D.C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore and John D. Valenti, Attys., Washington, D.C., on the brief), for petitioner.
 William A. Harding, Lincoln, Neb. (Nelson, Harding, Marchetti, Leonard & Tate, Lincoln, Neb., on the brief), for respondent.
 Irving M. King, Chicago, Ill. (Eugene Cotton and Robert H. Nichols, Chicago, Ill., on the brief), for intervenor.
 Before LEWIS, Chief Judge, JOHNSEN,[1] Senior Circuit Judge, and HOLLOWAY, Circuit Judge.
 PER CURIAM.
 
 
 1
 The application of the National Labor Relations Board for enforcement of its order, 176 NLRB No. 42, issued against American Beef Packers, Inc., respondent here, is granted.
 
 
 2
 Our reading of the transcript of the hearing before the Trial Examiner satisfies us that there is substantial evidence on the record as a whole to support the Board's findings and its determination that respondent had violated Section 8(a)(1) and (2) of the Act, 29 U.S.C. 158(a)(1) and (2). Also, we find no merit in respondent's contentions against the Trial Examiner's evaluation of the various witnesses' testimony or against the fairness of his hearing rulings.
 
 
 3
 In substance, the violations involved consisted in respondent's having accorded recognition to A. L. Morgan Union, Local No. 3, as the statutory bargaining representative of the employees at its Fort Morgan, Colorado slaughtering and processing plant, and in having entered into and put into effect a collective bargaining agreement with Morgan Union as to the employees-- when the interest which respondent had made known in respect to having that representation exist in the plant, and the part which it had played as to the effecting thereof in getting employees to sign a Morgan Union membership card, were such as to constitute general improper interference in choice or non-choice and so to leave respondent without right to treat or to regard the cards as evidence that Morgan Union represented an uncoerced majority of the employees.
 
 
 4
 The solicitations, the recognition made by respondent, and the execution of the contract by it had all occurred within a period of three days from the opening of the plant for slaughtering operations. The details of the situation are fully set out in the Trial Examiner's recommended decision and the Board's decision, and we see no need to repeat them here. We shall confine ourselves merely to a brief comment on some of the challenges made by respondent to the Board's remedial order.
 
 
 5
 1. The solicited membership cards had contained a provision for dues check-off and withholding in favor of Morgan Union, and the Board ordered respondent to reimburse the employees for the withholdings so made. On the part played by respondent in getting the membership cards signed, and in the relationship to the signing of the cards of the provision therein for purported consent to such a dues check-off, we think the Board cannot be held to have acted punitively or arbitrarily, but that it had the right to regard such reimbursement as constituting a reasonable and appropriate remedial requirement in the circumstances of the particular situation. (Incidentally, it appears from the Board's brief that much, if not most, of the dues withheld has been the subject of escrow deposit.)
 
 
 6
 2. We are unable to see anything improper in the proviso to the Board's requirement that respondent cease giving effect to the agreement made with Morgan Union, that 'nothing in this Decision shall be construed to require Respondent to vary or abandon any wages, hours, seniority, or other substantive feature of its relations with its employees which Respondent has established in the performance of said contract, or to prejudice the assertion by employees of any rights they may have thereunder'. This proviso does not purport to establish any rights between respondent and its employees from the illegally made collective bargaining agreement. It merely undertakes to make clear that if any legal rights or obligations may have come to exist out of what had been done under the contract, the Board's order cannot be regarded as intending to affect them. Thus, as an example, the employer would not be able to believe, or to say to the employees, that the Board's holding that the contract had been illegally entered into, and its requirement that the employer cease to recognize the contract, would make it unlawful for him to continue to pay the wages which the employees had been receiving under the contract, and that it would therefore he necessary for him to cut the wages back to what they had been at the time the agreement was made.
 
 
 7
 3. Respondent further argues that the Board's direction that it withdraw recognition from the Morgan Union and post notice thereof should not be required to be enforced, but should be regarded as having become moot, since respondent had already made withdrawal of such recognition at the time of the Board's order. But the Board's order and the notice which it directed respondent to post had relation not merely to such a withdrawal but to the withholding of any other recognition of Morgan Union 'unless and until said labor organization shall have been certified by the National Labor Relations Board as the exclusive representative of such employees'.
 
 
 8
 Enforcement decreed.
 
 
 
 [1]
 Of the Eighth Circuit sitting by designation